UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 4:09 CR 145 ERW (DDN) |
| | ) |
| MATTHEW MEES, | ) |
| | ) |
| Defendant. | ) |

**GOVERNMENT'S RESPONSE TO DEFENDANT'S MEMORANDUM IN SUPPORT OF MOTION TO SUPPRESS EVIDENCE AND STATEMENTS**

COMES NOW, the United States of America, by and through Michael W. Reap, Acting United States Attorney for the Eastern District of Missouri, and Robert F. Livergood, Assistant United States Attorney for said District, and for its Response to Defendant's Memorandum in Support of Motion to Suppress Evidence and Statements, states as follows:

## I.  INTRODUCTION

The defendant is charged in an Indictment with possession of child pornography (count one) in violation of Title 18, United States Code section 2252A(a)(5)(B) and possession of obscene visual representations of minors engaged in sexually explicit activity (count two) in violation of Title 18, United States Code section 1466A(b)(1).  The charges arise from the discovery of image files of child pornography and virtual child pornography on defendant's computer during the course of an investigation by St. Louis County Police detectives.  Motions hearings were held in this matter and the Court has allowed the parties to file supporting memoranda concerning the motion to suppress evidence and statements.

The defendant filed its motion claiming that defendant's recorded statement should be

1

suppressed based upon the holding in Missouri v. Seibert, 124 S.Ct. 2601 (2004), that defendant was not warned that his statements were being recorded, the defendant's invoked of his right to counsel, and that the search warrant for defendant's residence was not based upon probable cause.

## II.  LEGAL ANALYSIS

A.  Missouri v. Seibert does not apply in this case and the officers did not need to re-advise defendant of his Miranda rights.

Defendant cites Missouri v. Seibert, 124 S.Ct. 2601 (2004), for the proposition that the police tactic to put the defendant in a police vehicle, not re-advise him of his Miranda rights and secretly record him, was a tactic used to thwart Miranda's purpose of reducing the risk of a coerced confession.

In Seibert, the Supreme Court considered "a police protocol for custodial interrogation that calls for giving no warnings of the rights to silence and counsel until interrogations produced a confession." Id. at 2605. "[T]he interrogating officer follows it with Miranda warnings and then leads the suspect to cover the same ground a second time." Id. The Seibert decision holds that if "a deliberate strategy was used to avoid Miranda requirements, . . . postwarning statements related to the substance of what was said earlier are inadmissible in the absence of curative measures." United States v. Briones, 390 F.3d 610, 614 (8th Cir. 2004).

It is clear that Seibert is inapplicable to the instant case. Mees was given his Miranda rights by Sgt. Kavanaugh before any questioning commenced. The recorded questioning conducted by Det. Brillos did not begin until Det. Brillos arrived at the scene. Det. Brillos made reference to the fact that Mees previously received his Miranda rights but did not re-advise Mees of his rights. There was no attempt to avoid Miranda requirements because the requirements

2

were followed.

There was also no requirement for Det. Brillos to re-advise Mees of his Miranda rights. In United States v. Ferrer-Montoya, 483 F.3d 565 (8th Cir. 2007), Ferrer-Montoya was pulled over by a state trooper for a traffic violation. Id. at 567.  A search of the car revealed illegal drugs.  The trooper advised Ferrer-Montoya of his Miranda rights and defendant indicated he understood his rights.  The trooper asked Ferrer-Montoya if he wanted to say anything. Id. Ferrer-Montoya said "that he had 'told you before [of my travel plans]. . . .  I just told you what I know. . . .  What else can I say?'" Id.  The trooper then took Ferrer-Montoya to a nearby highway patrol post where they were met by state narcotic agents. Id. at 568.  The trooper told the agents that he previously advised Ferrer-Montoya of his Miranda rights.  The agents asked Ferrer-Montoya if the trooper had previously given him Miranda rights and he confirmed that he had been read his rights about one hour earlier and that he understood them. Id.  The Ferrer-Montoya then made statements to the agents.

Ferrer-Montoya claimed that "without a fresh recantation of the Miranda warnings," his statement was inadmissible. Id.  The court of appeals held that where only one hour had passed since the trooper read defendant his Miranda rights, the defendant indicated that he understood his rights, and there were no allegations of coercive conduct by the police, the agents "did not need to fully re-state the Miranda warnings prior to their interrogation of [defendant]. Id. at 570.

Mees, like Ferrer-Montoya, was given his Miranda rights and indicated that he understood his rights.  Within one hour of Sgt. Kavanaugh giving Mees his rights, Det. Brillos conducted an interview of defendant.  Det. Brillos asked defendant if he was given his Miranda rights.  Defendant agreed he had been given his rights and agreed to talk with Det. Brillos.  Also,

3

like in the Ferrer-Montoya case, there were no allegations of coercive conduct by police. Thus, defendant's statements should not be suppressed.

B. Police were not required to inform Defendant that his statements were being recorded.

Defendant claims that law enforcement officers should have been precluded from secretly recording his interrogation in the police vehicle. Defendant had no expectation of privacy while talking to a police officer in a car. Cf. United States v. Clark, 22 F.3d 799, 802 (8th Cir. 1994) ("[W]e conclude that a person does not have a reasonable or legitimate expectation of privacy in statements made to a companion while seated in a police car." ); United States v. Johnson, 2005 WL 2704892 (N.D. Iowa) ("[T]here is no reasonable expectation of privacy in a patrol car."). Likewise, the officers failure to inform that the defendant that he is being recorded does not render defendant's statement inadmissible under Miranda. Cf. Thatcher v. Romanowski, 2005 WL 20033534, at p. 6 ("[T]he mere fact that [the officer] did not advise petitioner, prior to questioning, that his interview was being secretly videotaped, would not render petitioner's statement inadmissible under Miranda. Recording a police interview on videotape without informing a defendant does not automatically render his statement involuntary and inadmissible, where a defendant validly waives his Miranda rights."). Thus, the officer did not have to inform defendant that he his interview was being recorded.

C. Police officers may continue interviewing the defendant until he unambiguously invokes his right to counsel.

Defendant contends that he invoked his right to counsel with the phrase, "Then I guess I'm just gonna wait until I get a lawyer and I don't know what else." A "'suspect must unambiguously request counsel,' and if he does not 'articulate his desire to have counsel present sufficiently clearly that a reasonable police officer in the circumstances would understand the

4

statement to be a request for an attorney" the officer is not required to stop questioning the suspect. Dormire v. Wilkinson, 249 F.3d 801, 804-805 (8th Cir. 2001). In the instant case, Mees did not unequivocally invoke his right to counsel.

In Davis v. United States, 114 S.Ct. 2350 (1994), Davis was being questioned as a suspect in a killing. Id. at 2353. Davis was given his rights and waived his rights to remain silent and to counsel. Id. About an hour and a half into the interview Davis said, "Maybe I should talk to a lawyer." Id. The officer then clarified whether Davis wanted an attorney, to which Davis said he did not want a lawyer. Id. The interview continued and until Davis said, "I think I want a lawyer before I say anything else." Id. Det. Brillos then clarified whether Mees was invoking his rights. When Mees indicated he was, all questioning stopped.

The Supreme Court stated that "if a suspect requests counsel at any time during the interview, he is not subject to further questioning until a lawyer has been made available or the suspect himself reinitiates conversation." Id. at 2354-55. "Invocation of the Miranda right to counsel 'requires, at a minimum, some statement that can reasonably be construed to be an expression of a desire for the assistance of an attorney." Id. at 2355 (citation omitted). However, if the suspect indicates that he "might be invoking his right to counsel," questioning does not have to stop. Id. Nor are officers required to ask clarifying questions to determine if the suspect is invoking his right to counsel. Id. at 2356. The Supreme court found Davis' statement, "'Maybe I should talk to a lawyer?' was not a request for counsel. . . ." Id. at 2357.

Similarly, other courts have found other statements made by suspects to be ambiguous. See, e.g., Dormire v. Wilkinson, 249 F.3d at 805 (The court found "that the state court was not unreasonable in determining that Wilkinson's question "Could I call my lawyer?" was not an

5

unambiguous request for counsel."); Diaz v. Senkowski, 76 F.3d 61, 63, 65 (Suspect did not invoke his right to counsel by asking, "I think I want a lawyer," and "Do you think I need a lawyer?".).

In the instant case, Mees was given his Miranda rights by Sgt. Kavanaugh and Mees knowingly waived those rights. When he was questioned by Det. Brillos, Mees made ambiguous statements concerning a lawyer: "Then I guess I'm just gonna wait until I get a lawyer and I don't know what else", Government Exhibit 3B at 16 (emphasis added); "I guess I need to wait and talk to a lawyer", id. at 22 (emphasis added); "I don't know whether I should wait for an attorney. I don't know", id. at 27 (emphases added). Each statement was ambiguous. When defendant made those statements it was not clear that he wanted a lawyer to be present during questioning by police. Even when Mees stated, "Well I asked the other gentleman immediately for an attorney" he was not presently invoking his right to counsel. Nor was it credible that Mees had previously invoked his right to counsel as evidenced by the following conversation:

Brillos: Okay, well, well . . . I can tell you, Matt. It's when I got into the car, I actually asked you that question[1], so uh, that's fine, but, but again, what I'm gonna do is I'm gonna go ahead and ask you, uh. . . . I obviously have some important

---

[1] At the beginning of the interview, the following conversation occurred:

Brillos: Okay. He's a policeman. Just like us. You understand we're policemen. Obviously, we have uniform police here.
Mees: Mmm hmm.
Brillos: And he, he went ahead and gave you your constitutional rights per Miranda, right? He verbally told them to you and you . . .
Mees: Yes.
Brillos: And you, you, understood them and you said that you were cool to talk and everything.
Mees: Yes.
Brillos: Is that right?
Mees: Yes.
Id. at 2.

6

>           questions that I'd like to ask you, but I want to qualify, whether, in fact, you are
>           asking for an attorney or not, or if you wanna wait and exercise that option at a
>           later time. It's up to you.
>
> Mees:     You can continue.

Id. at 23. Likewise, Sgt. Kavanaugh, who was the one who informed defendant his Miranda rights, stated during the suppression hearing that Mees knowingly waived his Miranda rights and did not invoke his right to counsel. Thus, Mees did not invoke his rights when he was informed of them by Sgt. Kavanaugh.

Questioning did cease, however, when Mees stated, "I'm gonna have talk to a lawyer before I answer anything else." Id. at 37.

For these reasons, defendant's statements should not be suppressed.

D. The search warrant for defendant's residence was based upon probable cause.

Defendant claims that the search warrant for defendant's residence was lacking in probable cause because law enforcement officers did not personally observe the child pornography images prior to the request for the warrant and did not otherwise corroborate that the images were child pornography. Nor, according to defendant, could officers rely on A.T.'s statements because her reliability could not be established. Defendant contends that A.T. could not be believed because some of the information used to obtain the search warrant allegedly turned out to be "untrue" because it was based on defendant's fantasy.

"A search warrant is valid under the Fourth Amendment if it is supported by probable cause. Probable cause exists when a 'practical, common-sense' inquiry that considers the totality of circumstances set forth in the information before the issuing judge yields a 'fair probability that contraband or evidence of a crime will be found in a particular place.'" United

States v. Stevens, 530 F.3d 714 (8th Cir. 2008). In Stevens, Stevens' adult daughter reported to police that she had seen him sell cocaine in front of their residence. Id. at 716. The daughter identified herself to the police and gave an in-person statement to the affiant police officer. Id. Her statements included admissions made by Stevens that he sold cocaine. Id. at 716-17. He even showed her cocaine that he kept in a safe inside his apartment. Id. at 717. The daughter's half-brother, unrelated to Stevens, also gave the police an in-person statement.

The affiant officer ran a criminal history check and included it in the affidavit. He also checked motor vehicle records and confirmed that two vehicles were registered to Stevens at the address his daughter had given. The affiant also attached the daughter's signed statement with his affidavit. The court of appeals concluded that probable cause existed to issue the warrant to search Stevens' residence. Id. at 718. The court found persuasive that Stevens' daughter and her half-brother identified themselves and voluntarily provided in-person statements to the affiant officer; and that the daughter's statement detailed first-person, eyewitness account of recent criminal activity and contraband in Steven's house. Id. The court found that "[t]he corroboration of even innocent, minor details can support a finding of probable cause." Id. at 719 (citation omitted). Thus it found persuasive that the affiant officer confirmed that two vehicles were registered to Stevens at the residence identified by his daughter; that the Stevens' criminal history and activity were similar to the allegations made by Stevens' daughter. Id.

In the instant case, just as in Stevens, there was a strong basis for knowledge because A.T. was Mees' former girlfriend. Government Exhibit 1B at ¶¶ 3-4. A.T. provided in-person statements to the affiant officer. Id. at ¶ 3. A.T. provided first person, eyewitness accounts of criminal activity and contraband at Mees' residence. Id. at ¶¶ 4-10. Furthermore, there was

8

corroboration by the officers. Mees was observed by officers to enter the residence at 4229 Ringford, the same address as described by A.T. Id. at ¶¶ 6, 12. A.T. said that she received email images from Mees of three-year-old girls displaying their genitalia. The subscriber information used to access the email account identified the subscriber as Robert Hayes at 4229 Ringford Drive, the same address as Mees' address. Id. at ¶¶ 13. Mees' criminal history and activity were similar to the allegations made by A.T. in that A.T. claimed that Mees told her he was having sexual relations with underage children and he had been convicted Child Molestation in the First Degree. Id. at ¶ 11. Based on the above, the Court should conclude that there was sufficient probable cause for the search warrant.

The allegedly "untrue" information in the affidavit was not based upon malfeasance or misfeasance of any law enforcement officer nor of A.T. This information was provided by Mees to A.T. and was in the form of defendant's fantasies as told by A.T. and indicated as such in the affidavit. See id. at ¶ 4. Statements concerning defendant's fantasies are not the type of information that would cause the search warrant to be suppressed. "A search warrant is void and the resulting evidence must be suppressed, however, if the defendant proves by a preponderance of evidence that the affiant knowingly and intentionally, or with reckless disregard for the truth, included a false statement in the warrant affidavit and the affidavit does not establish probable cause without the false statement. United States v. Stevens, 530 F.3d at 718. Thus, the search warrant should not be suppressed merely because the officer included the statements in the affidavit and indicated in the affidavit that such statements were defendant's fantasies.

Nor was the probable cause for the search warrant based only on statements concerning defendant's fantasies. Probable cause was established, in part, on A.T.'s statements that she had

9

seen child pornography in the defendant's possession, that defendant emailed her child pornography, and that defendant told her that he produced child pornography.  See Government Exhibit 1B at ¶¶  5, 6, 8 and 9.  Thus, the search warrant should not be suppressed.

Defendant also claims the search warrant for the IPhone should be suppressed because it was based partly on statements of A.T. and Mees.  In that A.T.'s statements supported probable cause and Mees' statements were freely and voluntarily given after receiving and knowingly waiving his Miranda rights, defendant's motion for suppression of the IPhone search warrant should be denied.

### III.  CONCLUSION

Based upon the above, the United States respectfully requests that the defendant's motion to suppress evidence and statements be denied.

<div style="padding-left: 50%;">

Respectfully submitted,

MICHAEL W. REAP
Acting United States Attorney

 s/ Robert F. Livergood
ROBERT F. LIVERGOOD, 22937
Assistant United States Attorney
111 S. 10th Street, Rm. 20.333
St. Louis, Missouri 63102
(314) 539-2200

</div>

### CERTIFICATE OF SERVICE

I hereby certify that on April 22, 2009, the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon the following:

Ms. Felicia Jones
Assistant Federal Public Defender

Office of the Federal Public Defender
1010 Market Street, Suite 200
St. Louis, MO 63101.

                *s/ Robert F. Livergood*
                ROBERT F. LIVERGOOD, 22937
                Assistant United States Attorney