UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 4:09CR00145 ERW |
| ) | |
| MATTHEW MEES, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM AND ORDER**

This matter comes before the Court on the Report and Recommendation of United States Magistrate Judge David D. Noce as to Defendant's Motion to Dismiss Indictment and Motion to Suppress Evidence and Statements [doc. #32], pursuant to 28 U.S.C. § 636(b).

Defendant Matthew Mees ("Defendant") filed a Motion to Dismiss [doc. #21], requesting that the Court dismiss Count II of his indictment, in which he is charged with knowingly possessing a visual depiction of a minor engaging in sexually explicit conduct, in violation of 18 U.S.C. § 1466A(b)(1). Defendant also filed a Motion to Suppress Evidence and Statements [doc. #22 (documentary motion) and #13 (oral motion)]. Magistrate Judge Noce issued a Report and Recommendation, in which he concluded that the Motion to Dismiss should be denied and the Motion to Suppress Evidence and Statements should be granted in part, and denied in part. Specifically, Magistrate Judge Noce recommended that statements made by Defendant after his third reference to counsel should be suppressed, but that all other evidence and statements should be admitted. Both Defendant and the Government filed objections to the Report and

Recommendation. The Court concludes that the Magistrate Judge's findings were correct, and therefore adopts the Magistrate Judge's findings of facts and conclusions of law.

## I. LEGAL STANDARD

"[W]hen a party objects to the report and recommendation of a magistrate judge concerning a dispositive matter, '[a] judge of the court shall make a de novo review determination of those portions of the report or specified proposed findings or recommendations to which objection is made. *United States v. Lothridge*, 324 F.3d 599, 600 (8th Cir. 2003) (citing 28 U.S.C. § 636 (b)(1)).[1] The district court has wide discretion to "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).

## II. DISCUSSION

### A. MOTION TO DISMISS

Defendant raises several arguments regarding why Count II of his indictment, in which he is charged with violating 18 U.S.C. § 1466A(b)(1),[2] should be dismissed. He argues that the statute is unconstitutionally vague or overbroad, that it violates the First Amendment and that the Court lacks jurisdiction. Each of these arguments will be addressed, in turn.

---

[1] 28 U.S.C. § 636(b)(1)(B) provides that "a judge may also designate a magistrate judge to conduct hearings, including evidentiary hearings, and to submit to a judge of the court proposed findings of fact and recommendations for the disposition, by a judge of the court . . . ." The statute further provides that each party may file written objections within ten days of being served with a copy of the magistrate judge's report and recommendation. *Id.* § 636(b)(1).

[2] 18 U.S.C. § 1466A(b)(1) prohibits a person from "knowingly possess[ing] a visual depiction of any kind, including a drawing, cartoon, sculpture, or painting that depicts a minor engaging in sexually explicit conduct and is obscene."

2

1. <u>Vagueness</u>

Defendant first argues that 18 U.S.C. § 1466A(b)(1) is vague and is, therefore, unconstitutional. Specifically, he asserts that "[t]he statute prohibiting the depiction of fictional characters is impossible to enforce because characters depicted in drawings have no age and it is impossible to discern the actual age of any non-existent person. It would be impossible for a jury to make a determination of fact on this issue at trial." (Def.'s Mtn. to Dismiss, doc. #21, p.2). Defendant also argues that the statute does not provide clear and adequate notice of the activity it attempts to prevent.

"There is a two-part test to determine whether a statute is void for vagueness. The statute, first, must provide adequate notice of the proscribed conduct, and second, not lend itself to arbitrary enforcement." *United States v. Bamberg*, 478 F.3d 934, 937 (8th Cir. 2007). "[T]he Constitution does not require impossible standards; all that is required is that the language conveys sufficiently definite warning as to the proscribed conduct when measured by common understanding and practices." *Hamling v. United States*, 418 U.S. 87, 111 (1974) (internal quotations omitted). "'[P]erfect clarity and precise guidance have never been required even of regulations that restrict expressive activity.'" *United States v. Williams*, 128 S. Ct. 1830, 1845 (2008) (quoting *Ward v. Rock Against Racism*, 491 U.S. 781, 794 (1989)).

With respect to the statute at issue, it is clear what conduct is prohibited. The statue prohibits a person from "knowingly possess[ing] a visual depiction of any kind, including a drawing, cartoon, sculpture, or painting that depicts a minor engaging in sexually explicit conduct and is obscene." 18 U.S.C. § 1466A(b)(1). First, the term "minor" is not vague. Although 18 U.S.C. § 1466A(b)(1) does not include a definition of the term, the statute was enacted as part of

3

the PROTECT Act, which includes the following definition of the term "minor": "a person who has not reached 18 years of age." Prosecutorial Remedies and Tools Against the Exploitation of Children Today Act of 2003, Pub. L. No. 108-21, § 601, 117 Stat. 650, 687 (2003); *see also United States v. Handley*, 564 F. Supp. 2d 996, 1003 (S.D. Iowa 2008). Moreover, even if the PROTECT Act did not set forth a definition of the term, it would be given the same definition using its "plain, ordinary, and commonly understood meaning." *Schumacher v. Cargill Meat Solutions Corp.*, 515 F.3d 867, 871 (8th Cir. 2008) ("In the absence of a statutory definition or clear contrary legislative intent, statutory terms are given their plain, ordinary, and commonly understood meaning."); *see also Handley*, 564 F. Supp. 2d at 1003-04. The term "minor" is commonly understood to mean a person under the age of eighteen. Additionally, this is consistent with the definition assigned to the term by Black's Law Dictionary. *See* Black's Law Dictionary 997 (6th Ed. 1990) (defining "minor" as "[a]n infant or person who is under the age of legal competence" and noting that "[i]n most states, a person is no longer a minor after reaching the age of 18").

Second, the term "sexually explicit conduct" is not vague. 18 U.S.C. § 1466A(f)(2) specifically provides that "the term 'sexually explicit conduct' has the meaning given the term in section 2256(2)(A) or 2256(2)(B)." 18 U.S.C. § 2256(2)(A) provides:

> "sexually explicit conduct" means actual or simulated--
> (i) sexual intercourse, including genital-genital, oral-genital, anal-genital, or oral-anal, whether between persons of the same or opposite sex;
> (ii) bestiality;
> (iii) masturbation;
> (iv) sadistic or masochistic abuse; or
> (v) lascivious exhibition of the genitals or pubic area of any person.

Additionally, 18 U.S.C. § 2256(2)(B) provides:

4

>"sexually explicit conduct" means--
>(i) graphic sexual intercourse, including genital-genital, oral-genital, anal-genital, or oral-anal, whether between persons of the same or opposite sex, or lascivious simulated sexual intercourse where the genitals, breast, or pubic area of any person is exhibited;
>(ii) graphic or lascivious simulated;
>>(I) bestiality;
>>(II) masturbation;
>>(III) sadistic or masochistic abuse; or
>(iii) graphic or simulated lascivious exhibition of the genitals or pubic area of any person.

As established by various courts, the definitions of the term "sexually explicit conduct" set forth in 18 U.S.C. § 2256(2)(A)-(B) are not vague. *See United States v. Rearden*, 349 F.3d 608, 620 (9th Cir. 2003) ("we have already held that the phrase 'sexually explicit conduct' is neither vague nor overly broad"); *see also United States v. Hill*, 142 Fed. Appx.836, 837-38 (5th Cir. 2005) (finding that definition of "sexually explicit conduct" including the term "lascivious" was not unconstitutionally vague).

Finally, the term "obscene" is not vague. Although the term is not defined in the statute, "[t]he Supreme Court has repeatedly rejected vagueness challenges to obscenity statutes." *United States v. Schales*, 546 F.3d 965, 972 (9th Cir. 2008). "[F]ederal statutes dealing with obscenity are construed to incorporate the *Miller* standards and thus are not unconstitutionally vague." *Id.* at 973 (referring to the three-part obscenity test set forth by the United States Supreme Court in *Miller v. California*, 413 U.S. 15 (1973)).[3] The United States Supreme Court has held that the

---

[3]The United States Supreme Court established the following three-part test for determining if a particular work is obscene, and therefore not protected by the First Amendment: "(a) whether the average person, applying contemporary community standards would find that the work, taken as a whole, appeals to the prurient interest; (b) whether the work depicts or describes, in a patently offensive way, sexual conduct specifically defined by the applicable state law; and (c) whether the work, taken as a whole, lacks serious literary, artistic, political, or scientific value." *Miller v. California*, 413 U.S. 15, 24 (1973) (internal quotations and citations

*Miller* obscenity test is not vague because it "limits the uncertain sweep of the obscenity definition." *Reno v. ACLU*, 521 U.S. 844, 873 (1997); *see also Schales*, 546 F.3d at 973. Because the statute challenged by Defendant is a federal obscenity statute, the *Miller* obscenity test applies and the statute is not vague.

Defendant argues that the statute is vague because it is "impossible" to discern the age of a non-existent person. In making this argument, Defendant confuses vagueness with the burden of proof. A statute is not deemed to be vague merely because it may be difficult to apply to the facts of a particular case. "Close cases can be imagined under virtually any statute. The problem that poses is addressed, not by the doctrine of vagueness, but by the requirement of proof beyond a reasonable doubt." *United States v. Williams*, 128 S. Ct. 1830, 1846 (2008). The issue of the age of the person appearing in a visual depiction is an element that must be proved by the Government beyond a reasonable doubt; that this decision may be a difficult one for the jury does not make the statute vague.

The Court finds that 18 U.S.C. § 1466A(b)(1) provides adequate notice of the proscribed conduct and does not lend itself to arbitrary enforcement. Thus, Defendant's vagueness claim is rejected.

2. Overbreadth and First Amendment Issues

Defendant next argues that 18 U.S.C. § 1466A(b)(1) "is overbroad and involves actions which the Supreme Court invalidated under *Ashcroft v. Free Speech Coalition*, [535] U.S. 234 (2002)." Defendant also asserts that "the creation of virtual images is protected by the First Amendment." (Def.'s Mtn. to Dismiss, doc. #21, p.2-3). In his Objections to the Magistrate

---

omitted).

Judge's Report and Recommendation, Defendant also argues that "an individual is entitled to possess obscene materials in the privacy of their home." The Court rejects each of these arguments.

A statute is overbroad under the First Amendment and therefore unconstitutional if "it prohibits a substantial amount of protected speech." *United States v. Williams*, 128 S. Ct. 1830, 1838 (2008). Although the First Amendment provides that "Congress shall make no law . . . abridging the freedom of speech . . . ," U.S. Const. Amend. I, not all speech is protected. The United States Supreme Court has "long held that obscene speech-sexually explicit material that violates fundamental notions of decency-is not protected by the First Amendment." *Williams*, 128 S. Ct. at 1835-36. Although the Supreme Court has demonstrated willingness to protect some explicit material, that protection has been limited to *nonobscene* materials. *See id.* at 1836 (citing *Miller v. California*, 413 U.S. 15, 23-24 (1973); *Jenkins v. Georgia*, 418 U.S. 153, 161 (1974)). In *Ashcroft v. Free Speech Coalition*, the United States Supreme Court held that Child Pornography Prevention Act of 1996 ("CPPA") was unconstitutionally overbroad in that it prohibited speech that was neither child pornography nor obscene. 535 U.S. 234, 251 (2002). While this case did recognize that, in some cases, virtual images are protected by the First Amendment, the case did not extend that protection to obscene virtual images. *See id.* at 246 (recognizing that the CPPA "extends to images that appear to depict a minor engaging in sexually explicit activity without regard to the *Miller* requirements").

The statute on which Count II of Defendant's indictment is based requires that the visual depiction at issue be obscene (as established by the *Miller* 3-part obscenity test). *See* 18 U.S.C. § 1466A(b)(1). The statute does not prohibit the type of non-obscene virtual depictions that were

at issue in *Ashcroft v. Free Speech Coalition*. The First Amendment does not protect the type of obscene speech that is prohibited by 18 U.S.C. § 1466A(b)(1). Further, the statute is not overbroad because there is no *protected* speech being prohibited.

Defendant also argues that an individual is entitled to possess obscene materials in the privacy of his or her home. The United States Supreme Court has held that "the First and Fourteenth Amendments prohibit making mere private possession of obscene material a crime." *Stanley v. Georgia*, 394 U.S. 557, 568 (1969). However, the statute under which Defendant is charged, and which Defendant is presently challenging, does not make mere possession of obscene material a crime; rather, the statute requires some connection to interstate commerce.[4] Defendant is not being charged with mere possession of obscene material; he is charged with possessing obscene material that was produced using materials that traveled in interstate commerce. "In an unbroken line of Supreme Court cases since *Stanley*, the [Supreme] Court has repeatedly rejected the notion . . . that as a matter of logic, because the First Amendment prohibits criminalization of private possession of obscene materials within the home, there exists a

---

[4]Specifically, 18 U.S.C. § 1466A(b)(1) is only applicable when: "(1) any communication involved in or made in furtherance of the offense is communicated or transported by the mail, or in interstate or foreign commerce by any means, including by computer, or any means or instrumentality of interstate or foreign commerce is otherwise used in committing or in furtherance of the commission of the offense; (2) any communication involved in or made in furtherance of the offense contemplates the transmission or transportation of a visual depiction by the mail, or in interstate or foreign commerce by any means, including by computer; (3) any person travels or is transported in interstate or foreign commerce in the course of the commission or in furtherance of the commission of the offense; (4) any visual depiction involved in the offense has been mailed, or has been shipped or transported in interstate or foreign commerce by any means, including by computer, or was produced using materials that have been mailed, or that have been shipped or transported in interstate or foreign commerce by any means, including by computer; or (5) the offense is committed in the special maritime and territorial jurisdiction of the United States or in any territory or possession of the United States." 18 U.S.C. § 1466A(d).

8

correlative 'right to receive' obscene materials." *United States v. Whorley*, 550 F.3d 326, 332-33 (4th Cir. 2008) (citing *United States v. Reidel*, 402 U.S. 351, 354-55 (1971) (explicitly rejecting the notion that *Stanley*'s recognition of the defendant's right to possess obscenity meant that "someone must have the right to deliver it to him" through the channels of commerce (internal quotation marks omitted)); *Smith v. United States*, 431 U.S. 291, 307 (1977) ("*Stanley* did not create a right to receive, transport, or distribute obscene material, even though it had established the right to possess the material in the privacy of the home"); *United States v. Orito*, 413 U.S. 139, 141 (1973) (holding that *Stanley*'s tolerance of obscenity within the privacy of the home created no "correlative right to receive it, transport it, or distribute it"); *United States v. Thirty-Seven (37) Photographs*, 402 U.S. 363, 376 (1971) ("That the private user under *Stanley* may not be prosecuted for possession of obscenity in his home does not mean that he is entitled to import it from abroad free from the power of Congress to exclude noxious articles from commerce")).

Thus, the Court finds that the statute at issue is not overbroad and that Defendant's First Amendment based arguments must fail.

### 3. Jurisdiction

Finally, in his Objections to the Magistrate Judge's Report and Recommendation, Defendant argues that the Court lacks jurisdiction because "an individual creating images in their own home has no effect on interstate commerce."

Defendant is charged with possessing obscene material that was produced using materials that traveled in interstate commerce, specifically a Seagate Barracuda 200 GB hard drive that was produced outside of Missouri and has therefore traveled in interstate commerce. His argument that the use of this hard drive in his own home has no effect on interstate commerce must fail.

9

The Eighth Circuit has rejected similar challenges in numerous cases. *See, e.g.*, *United States v. Betcher*, 534 F.3d 820, 824 (8th Cir. 2008) (rejecting argument that camera used to manufacture child pornography "does not constitute an impact upon interstate commerce sufficient to form a jurisdictional basis upon which Congress could validly prohibit the charged conduct under its Commerce Clause powers"); *United States v. Koenen*, 230 Fed. Appx. 631 (8th Cir. 2007) (finding that "Koenen's admission that the camera he used to produce the child pornography had traveled in interstate commerce is by itself sufficient" to establish federal jurisdiction); *United States v. Mugan*, 394 F.3d 1016, 1023-24 (8th Cir. 2005) (finding that use of digital memory card to store child pornography had a sufficient impact on interstate commerce in that "[b]y storing the images on this digital card, Mugan placed them on a medium which would permit their immediate and widespread dissemination over the internet"); *United States v. Hoggard*, 254 F.3d 744, 746 (8th Cir. 2001) (finding that use of camera and film that had been transported in interstate commerce established a sufficient "jurisdictional nexus . . . to place the statute beyond constitutional attack"). Thus, the Court rejects Defendant's jurisdictional argument.

### B. MOTION TO SUPPRESS EVIDENCE AND STATEMENTS

The Court begins by noting that no objections were filed to Magistrate Judge Noce's recitation of the facts of this case. Therefore, this Court adopts Magistrate Judge Noce's findings of fact in their entirety. The Court will not reiterate them here.

Defendant seeks to suppress evidence that was seized from his home and telephone by arguing that the search warrants obtained by police officers were invalid. Additionally, Defendant seeks to suppress various statements he made to police officers.

1. <u>Suppression of Evidence - Validity of Search Warrants</u>

In order to be valid, a search warrant must be based upon a finding by a neutral and detached judicial officer that there is probable cause to believe that evidence, instrumentalities or fruits of a crime, contraband, or a person for whose arrest there is probable cause, may be found in the place to be searched. *Warden v. Hayden*, 387 U.S. 294 (1967); *Johnson v. United States*, 333 U.S. 10 (1948); Fed. R. Crim. P. 41. Probable cause is defined as "a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983). "A judicial officer who has been called upon to issue a search warrant must determine whether, in light of all the circumstances set forth in the affidavit, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *United States v. Martin*, 866 F.2d 972, 976 (8th Cir. 1989) (internal citations and quotations omitted). "In dealing with probable cause . . . as the very name implies, we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life upon which reasonable and prudent men, not legal technicians, act." *Brinegar v. United States*, 338 U.S. 160, 176 (1949).

In reviewing the legality of the issuance of a search warrant, the Court reviews whether the issuing judge had a substantial basis for concluding that probable cause existed for the issuance of the warrant. *Gates*, 462 U.S. at 250; *Martin*, 866 F.2d at 976. A review of the sufficiency of an affidavit is not *de novo*, instead, "[a]n issuing judge's probable cause determination is entitled to substantial deference." *United States v. Durham*, 470 F.3d 727, 733 (8th Cir. 2006); *Gates*, 462 U.S. at 250.

Defendant first challenges the search warrant issued for his home, 4229 Ringford. With respect to that search warrant, Detective McCartney submitted a written, sworn affidavit in support of his application for the warrant. This affidavit set forth information Detective McCartney had received from Allison Thomas, who had been sexually involved with Defendant. Specifically, the affidavit stated that Ms. Thomas told Detective McCartney that: Defendant discussed with her his fantasy of having sexual relations with a child; Defendant emailed her images of child pornography, including a picture of "Mykayla," whom he described as his three-year-old cousin; Defendant showed her a video recording of Defendant performing oral sex on a two- to three-year-old female who he said was "Mykayla"; and that Defendant told her that he had engaged in sexual activity with "Mykayla" and another minor relative. Additionally, Detective McCartney noted in the affidavit that Defendant had previously been charged and convicted of first degree child molestation and that he was a registered sex offender. Finally, Detective McCartney outlined his efforts to corroborate Ms. Thomas's information. Based on the foregoing, the Court finds that the issuing judge[5] had a substantial basis for concluding that there was a fair probability that contraband or evidence of a crime would be found at 4229 Ringford and, therefore, that probable cause existed for the issuance of the warrant.

Defendant also challenges the search warrant issued for his cellular phone. The phone was properly seized from Defendant's girlfriend's car, as she had freely and voluntarily consented to the search of her car.[6] After obtaining the phone, Detective McCartney applied for a search

---

[5]The issuing judge in this case was Judge Dale W. Hood, of the St. Louis County Circuit Court.

[6]The Fourth Amendment's prohibition against unreasonable searches and seizures does not apply where consent to search has been given. *Illinois v. Rodriguez*, 497 U.S. 177, 181 (1990);

warrant to search the contents of the phone, and submitted a sworn affidavit in support of his application. His affidavit included the same information as the previous affidavit, with additional information about Defendant's admission to his probation officer that he had child pornography on his cell phone. The Court finds that the affidavit provided a substantial basis for concluding that there was a fair probability that contraband or evidence of a crime would be found on Defendant's cellular phone and that probable cause existed for the issuance of the warrant.

Because the Court finds that probable cause existed for the search warrant for 4229 Ringford and the search warrant for Defendant's phone, Defendant's request for the suppression of evidence found via these search warrants must be denied.

    2.    <u>Suppression of Statements</u>

Defendant makes various arguments regarding the suppression of the statements he made to police officers. He argues that the statements should be suppressed because: he was not properly advised of his *Miranda* rights; his conversation with the police should not have been secretly recorded; and the questioning continued after he clearly invoked his right to counsel. The Court will address each of these arguments, in turn.

    a.    *Administration of* Miranda *Rights*

Defendant makes various arguments regarding what he alleges was an improper administration of his *Miranda* rights. The Court finds that Defendant was properly informed of

---

*United States v. Brown*, 345 F.3d 574, 579 (8th Cir. 2003). However, in order to be valid, such consent must be given "freely and voluntarily." *Schneckloth v. Bustamonte*, 412 U.S. 218, 222 (1973). Defendant's girlfriend's consent met these requirements, so the search of her car and the seizure of Defendant's phone did not violate the Fourth Amendment.

his rights under *Miranda* and that he waived those rights up to the point at which he invoked his right to counsel, as discussed in a subsequent section.

A person can waive his or her *Miranda* rights, "[b]ut the waiver must be voluntary, knowing, and intelligent, that is, it must be 'the product of a free and deliberate choice rather than intimidation, coercion, or deception.'" *United States v. Phillips*, 506 F.3d 685, 687 (8th Cir. 2007) (quoting *United States v. Jones*, 23 F.3d 1307, 1313 (8th Cir. 1994); *Moran v. Burbine*, 475 U.S. 412, 421 (1986)). In this case, it is clear that Defendant made a voluntary and knowing waiver of his constitutional rights under *Miranda*. Defendant was stopped by the police and approximately forty minutes later, Detective Adam Cavanaugh arrived to speak with Defendant. Detective Cavanaugh orally advised Defendant of his *Miranda* rights by reading them from a card. Detective Cavanaugh then asked Defendant if he understood his rights and Defendant answered "yes." Defendant also indicated that he was willing to speak to the police. There is no evidence that Defendant was under the influence of drugs or alcohol or affected by a mental infirmity of any sort. The officers did not threaten Defendant in any way and they did not engage in any force against Defendant in an effort to induce him to make a statement. Additionally, the officers did not make any promises to Defendant in exchange for his statements. Based on the totality of the circumstances, it is clear that Defendant's waiver of his *Miranda* rights was voluntary, knowing, and intelligent.[7]

---

[7]Defendant challenges the waiver because he did not sign a *Miranda* warning form. However, various Courts have held that such a form is not necessary for a proper waiver of *Miranda* rights. *See United States v. Murdock*, 491 F.3d 694, 700 (7th Cir. 2007) ("the officers' failure to obtain a written waiver from Murdock does not render his oral waiver or subsequent confession involuntary"); *United States v. Gell-Iren*, 146 F.3d 827, 830 (10th Cir. 1998) ("Where a defendant's actions clearly demonstrate that he has voluntarily waived his *Miranda* rights, his failure to sign a waiver of rights form does not render his waiver involuntary.").

Defendant argues that even if the police officers warned Defendant of his *Miranda* rights, they should have re-administered the warning before beginning the secretly recorded conversation. He argues that this practice is prohibited under *Missouri v. Seibert*, 542 U.S. 600 (2004), which made police interrogation in successive unwarned phases unconstitutional. However, the *Seibert* case is inapposite to this case. In *Seibert*, the United States Supreme Court found that a "midstream recitation of warnings after interrogation and unwarned confession could not effectively comply with *Miranda*'s constitutional requirement." *Id.* at 604. In this case, however, there was no "midstream" warning; rather the officers informed Defendant of his *Miranda* rights prior to asking him any questions.

Moreover, the officers were not required to read Defendant his *Miranda* rights a second time when he entered the patrol car and began talking to Detective Brillos. "*Miranda* . . . does not necessarily require that a suspect be warned anew each time he is questioned." *United States v. Pruden*, 398 F.3d 241, 246 (3d Cir. 2005) (citing *Guam v. Dela Pena*, 72 F.3d 767, 769-70 (9th Cir. 1995) (finding that a fifteen-hour delay between waiver and statement does not require new warning and waiver)); *see also United States v. Ferrer-Montoya*, 483 F.3d 565, 569-70 (8th Cir. 2007) (finding that there was no need to re-read the *Miranda* warnings when the warnings had been given one hour earlier and no activities occurred that would necessitate reiteration). Here, Defendant was read his *Miranda* rights and indicated that he understood those rights. Less than thirty minutes later,[8] Defendant entered the patrol car and began the secretly recorded

---

[8]The facts indicate that Detective Cavanaugh, the police officer who administered the *Miranda* rights to Defendant, arrived at the scene at approximately 12:30 a.m. The secretly recorded conversation between Detective Brillos and Defendant began at approximately 12:58 a.m.

15

conversation with Detective Brillos. Prior to beginning the conversation, Detective Brillos confirmed with Defendant that he had heard his *Miranda* rights and that he had agreed to waive those rights and talk to the police. Based on the short amount of time between conversations and Detective Brillos's confirmation that Defendant had heard and waived his *Miranda* rights, this Court finds that it was not necessary for the officers to read Defendant his *Miranda* rights a second time.

                                                                b.        *Secret Recording of Conversation*

Defendant argues that "law enforcement officials should have been precluded from secretly recording his interrogation in the police vehicle." (Def.'s Memo. in Support, doc. #28, p.2). This argument lacks merit, as the Eighth Circuit has previously rejected similar arguments. "[A]llowing police to record statements made by individuals seated inside a patrol car does not intrude upon privacy and freedom to such an extent that it could be regarded as inconsistent with the aims of a free and open society." *United States v. Clark*, 22 F.3d 799, 802 (8th Cir. 1994). Because there is no reasonable expectation of privacy inside a police car, Defendant's claim that the officers' secret recording of the conversation in the patrol car was unconstitutional must fail.

                                                                c.        *Invocation of Right to Counsel*

Defendant asserts that he unequivocally asserted his right to counsel several times throughout the course of his conversation with Detective Brillos, and thus argues that the continued questioning violated his constitutional rights. Magistrate Judge Noce found that Defendant unequivocally requested an attorney when he stated, "Well, I asked the other gentleman immediately for an attorney. So, I don't understand." (Transcript, doc. #33-8, p.23). This Court agrees.

16

"If a suspect effectively waives his right to counsel after receiving the *Miranda* warnings, law enforcement officers are free to question him." *Davis v. United States*, 512 U.S. 452, 458 (1994) (citing *North Carolina v. Butler*, 441 U.S. 369, 372-76 (1979)). "But if a suspect requests counsel at any time during the interview, he is not subject to further questioning until a lawyer has been made available or the suspect himself reinitiates conversation." *Id.* (citing *Edwards v. Arizona*, 451 U.S. 477, 484-85 (1981)). A suspect's request for counsel must be unambiguous and unequivocal. "[I]f a suspect makes a reference to an attorney that is ambiguous or equivocal in that a reasonable officer in light of the circumstances would have understood only that the suspect *might* be invoking the right to counsel, our precedents do not require the cessation of questioning." *Id.* at 459. Thus, to properly invoke one's right to counsel, a suspect "must articulate his desire to have counsel present sufficiently clearly that a reasonable police officer in the circumstances would understand the statement to be a request for an attorney." *Id.*

Magistrate Judge Noce properly found that Defendant did not effectively invoke his right to counsel with either of the first two references he made to an attorney. The first statement by Defendant that was not sufficient to invoke his right to counsel was, "Then I guess I'm just gonna wait until I get a lawyer and I don't know what else (inaudible)." (Transcript, doc. #33-8, p.16). The second statement was, "I guess I need to wait and talk to a lawyer." (Transcript, doc. #33-8, p.22). Neither of these statements can be considered an unambiguous or unequivocal request for an attorney. *See, e.g.*, *Davis*, 512 U.S. at 462 (defendant's statement that "[m]aybe I should talk to a lawyer" was not a request for counsel); *United States v. Zamora*, 222 F.3d 756, 765-66 (10th Cir. 2000) (defendant's statement that "I might want to talk to my attorney" did not amount to an unequivocal request for counsel); *Diaz v. Senkowski*, 76 F.3d 61, 65 (2d Cir. 1996) (defendant's

17

statement that "I think I want a lawyer" was not an unequivocal request for counsel); *Taylor v. State*, 689 N.E.2d 699, 703 (Ind. 1997) (defendant's statement that "I guess I really want a lawyer, but, I mean, I've never done this before so I don't know" did not invoke right to counsel). Based on the circumstances, a reasonable police officer would not have understood these statements by Defendant to be a request for an attorney.

Although Defendant initially failed to adequately invoke his right to counsel, he did make an unequivocal and unambiguous request shortly thereafter. After Defendant made his second statement that "I guess I need to wait and talk to a lawyer," Detective Brillos asked him to clarify whether or not he was actually requesting an attorney. In response, Defendant stated, "Well, I asked the other gentleman immediately for an attorney. So, I don't understand." (Transcript, doc. #33-8, p.22-23). This statement demonstrated that Defendant believed that he had already effectively requested an attorney and that he was confused about what more he needed to do to get an attorney. Considering Defendant's statement and his belief that he had requested an attorney, it is clear that, at this point, Defendant wanted an attorney. Considering the circumstances, including Defendant's two prior references to counsel, the Court finds that a reasonable officer should have understood Defendant's statement to be a request for counsel. *See Davis*, 512 U.S. at 459; *Alvarez v. Gomez*, 185 F.3d 995, 998 (9th Cir. 1999).

The Government argues that Defendant's statement about already asking for an attorney cannot be construed as an unequivocal invocation of the right to counsel. Rather, the Government argues that the "conflict between what defendant told Det. Brillos at the beginning of the interview (that he had waived his rights) and what the defendant then said (that he had previously requested an attorney) made defendant's declaration ambiguous or equivocal."

18

(Govt.'s Obj., doc. #34, p.4). This Court disagrees. Regardless of whether Defendant actually "asked the other gentleman" for an attorney, his statement to Detective Brillos demonstrated that, at that point, he wanted an attorney. Despite the seeming inconsistencies in Defendant's statements, the Court finds that a reasonable officer should have understood that Defendant wanted an attorney.

Once a suspect unequivocally asserts his or her right to an attorney, a law enforcement officer must cease all interrogation until counsel has been made available to him or until the suspect initiates further communication with the officer. *Edwards v. Arizona*, 451 U.S. 477, 484-85 (1981). Furthermore, "a valid waiver of that right cannot be established by showing only that he responded to further police-initiated custodial interrogation even if he has been advised of his rights." *Id.* at 484. Because the Defendant in this case unequivocally asserted his right to an attorney when he stated "Well, I asked the other gentleman immediately for an attorney. So, I don't understand," Detective Brillos should have stopped his interrogation until counsel was available to assist Defendant. However, Detective Brillos proceeded with the interrogation. As a result, all statements made by Defendant after he invoked his right to counsel are inadmissible and will be suppressed. The only exception to this holding are the statements voluntarily made by Defendant while he was being escorted for booking by Detective Cavanaugh.[9] These statements were voluntary and were not in response to police questioning. "Voluntary statements that are not in response to interrogation are admissible with or without the giving of *Miranda* warnings." *United States v. Londondio*, 420 F.3d 777, 783 (8th Cir. 2005). These statements are admissible

---

[9]Specifically, Defendant stated, "I am never going to change." He also apparently made other unprovoked oral statements to Detective Cavanaugh.

19

even when made after invoking the right to counsel. *Edwards*, 451 U.S. at 485. Thus, Defendant's statements to Detective Cavanaugh while being escorted for booking, although made after he invoked his right to counsel, are admissible and will not be suppressed.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant Matthew Mees's Motion to Dismiss Indictment [doc. #21] is **DENIED**.

**IT IS FURTHER ORDERED** that Defendant Matthew Mees's Motion to Suppress Evidence and Statements [doc. #22 (documentary motion) and #13 (oral motion)] is **GRANTED, in part**, and **DENIED, in part**. All statements made by Defendant during his interview with Detective Brillos after he invoked his right to counsel will be suppressed. All other statements and evidence are admissible and will not be suppressed.

**IT IS FURTHER ORDERED** that Government's Motion for a Determination of Admissibility Pursuant to Title 18 U.S.C. § 3501 [doc. #10 (documentary motion) and #14 (oral motion)] is **DENIED, as moot**.

Dated this 10th Day of June, 2009.

_____
E. RICHARD WEBBER
UNITED STATES DISTRICT JUDGE