**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | No.   4:09 CR 145 ERW |
| | ) | |
| **MATTHEW MEES,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**GOVERNMENT'S SENTENCING MEMORANDUM**

COMES NOW the United States of America, by and through the Acting United States Attorney for the Eastern District of Missouri, Michael W. Reap,  and Robert F. Livergood, Assistant United States Attorney for said district, and files its Sentencing Memorandum.

On July 25, 2009, defendant pleaded guilty to one count of Possession of Child Pornography. The parties agreed that the total offense level was 32 and that the determination of defendant's criminal category shall be left to the Court.  The parties further agreed that "neither party shall request a sentence above or below the applicable guideline range pursuant to any chapter of the Guidelines, Title 18, United States Code, Section 3553(a), or any other provision or rule of law, unless that request and facts which support that request are addressed in this document or the request is made with the consent of both parties."   Neither party is requesting a sentence above or below the applicable Guideline range.

In United States v Haack, 403 F.3d 997 (8th Cir. 2005), the Court of Appeals described  the process that the District Court should follow in determining a sentence in light of  United States v. Booker, 125 S. Ct. 738 (2005).  The Court should first determine the guideline range based upon all

1

enhancements and the defendant's criminal history.  Second, the Court should determine if any guideline departures apply.  Finally, the Court should determine if the guideline range is reasonable considering all factors listed in Title 18, United States Code, Section 3553(a).   Haack, 403 F.3d at 1002-1003.

The total offense level as calculated by the parties is level 32.  Neither party is requesting a departure under the sentencing guidelines.  Furthermore, neither party is requesting a variance under Title 18, United States Code, Section 3553(a).  The application of the factors listed in 18 U.S.C. § 3553(a) in this case supports a sentence of 151 to 188 months.

I.	The Nature and Circumstances of the Offense

In January 2008, defendant began a relationship with A.T., an adult female. "Presentence Investigation Report" (hereinafter, "PSR") at ¶ 8.  In March of 2008, defendant and A.T. began to have a sexual relationship.  Id. During their sexual encounters, defendant shared in graphic detail his fantasies with A.T. about having sex with a young child.  Id.  Defendant showed child pornography to A.T. during their encounters and emailed child pornography to her on at least ten occasions.  Id.  In May of 2008, defendant asked A.T., during a sexual encounter, if he could display a picture of child.  Id.  Defendant then displayed on his computer a picture of a female child, about two to three years old, in a lascivious display of her genitals.  Defendant showed A.T. a photograph of his sister, naked, at age five to eight.  Id.  Defendant also asked A.T. to wear a diaper and suck on a pacifier while they had sexual relations.  Id.

On September 12, 2008, St. Louis County Police officers executed a search warrant at defendant's residence in St. Louis County, Missouri.  Id. at ¶ 9.  During the search warrant officers seized defendant's computer and a shotgun.  Id.  A forensic analysis of the computer was conducted

and found that its hard drive, which traveled in interstate commerce, contained child pornography, including, but not limited to, six graphic image files, one of which depicted a prepubescent female in a lascivious display of her genitals who appeared to be crying while another person penetrated her vagina with his finger. Id.

Defendant also made admissions to the police. Defendant "spontaneously stated to [police], 'I'm never going to change! Look, I have been molesting kids since I was ten years old, it's all I know. I was able to shake it for a while but when I get stressed I've gotta be with kids, I started looking at the internet and it's been down hill since.'" Id. at ¶ 10.

  II.  <u>History and Characteristics of the Defendant</u>

Defendant was convicted of three counts of Child Molestation in the First Degree. Id. at ¶ 35. Defendant subjected his sister, C.M., who was less than 14 years old, to sexual contact. Id. ¶ 37. Defendant molested his sister on a daily basis from the time she was eight years old to eleven years old. Id. Defendant was charged with molesting his sister from the time he was thirteen years old to one day before his seventeenth birthday. The molestation included sexual intercourse, oral sex and touching. Id. According to police reports, their mother was aware of the abuse. Id. Defendant was sentenced to 15 yeas but placed in a Shock Incarceration Program pursuant to M<small>O</small>. R<small>EV</small>. S<small>TAT</small>. section 559.115. Defendant was released from shock incarceration and placed on probation for a period of five years.

While incarcerated, defendant minimized his actions by stating that the victim came into the bathroom and they had hand-to-genital contact. Id. at ¶ 39. He also claimed that the victim was fine. Id.

While on probation, defendant attended sexual offender treatment. Id. **"He was assessed**

**as being a 'moderate' risk for re-offending.**" Id. (emphasis added)

Defendant was referred by his attorney for a psychological evaluation. "Forensic Psychological Evaluation, dated December 11, 2009" (hereinafter "Report") at 1. In forming an opinion regarding the defendant, the examiner relied on several sources of data, including the police interview of defendant, the PSR, police reports, and other documents. Report at 1-2. Regarding defendant's fantasies regarding children, the examiner wrote: "[Defendant] reported that he had fabricated the story [he told A.T.] about having sexual relations with the little girl. He said he made it up so that [A.T.] would leave him alone." The examiner, however, ignored in the same interview, defendant's admission that he was role-playing: "I'm telling. . . there's no. . . It's all just games. It's all just role-playing." Gov. Ex. 3B[1] at 26. The examiner also ignored defendant's statement contained in the PSR and the police reports: "**I'm never going to change! Look, I have been molesting kids since I was ten years old, it's all I know. I was able to shake it for a while but when I get stressed I've gotta be with kids, I started looking at the internet and it's been down hill since.**"

The examiner administered the Minnesota Multiphasic Personality Inventory - 2 (MMPI-2). The examiner wrote:

> The MMPI-2 incorporates validity scales which assess the patient's test-taking strategy, honesty of responding, and bias. [Defendant] produced an exaggerated profile on the MMPI-2. He reported a high number of symptoms as well as a high number of unusual symptoms that are not typically endorsed by people with bona fide mental illness. The validity scales indicated [defendant] may have been exaggerating negativity and attempting to portray himself in an unfavorable light.

Id. at 8-9. Thus, according to defendant's exaggerated MMPI-2 profile, he did not accurately

---

[1] Gov. Ex. 3B is the transcript of the police interview of defendant which was submitted to the Magistrate Judge during the motion hearings.

convey information to the examiner.

Even though defendant has a history of sexually abusing children, fantasized about having sex with children, admitted that when he is stressed he wanted to be with children, and possessed child pornography, the examiner failed to diagnose defendant with pedophilia. The examiner did find him to be suffering from bipolar disorder, posttraumatic stress disorder, and obsessive compulsive disorder. Id. at 9. The examiner concluded that his bipolar disorder may "compromise[] his ability to behave responsibly with respect to viewing pornographic images on [] his computer." Id. at 10. The examiner also noted that a person suffering from this disorder, and "in the midst of a manic-like episode have been known to become excessively involved in pleasurable activities that have a high potential for painful consequences, such as unrestrained buying sprees and sexual indiscretions. . . . During such episodes, judgment may be impaired and the ability to resist impulses is diminished." Id. at 10 (emphasis added).

In summary, defendant should receive a stiff sentence, within the guideline range, but consecutive to his charges for which he was revoked, based on the following reasons: (1) defendant was previously convicted of three counts of child molestation in the first degree in the State of Missouri; (2) defendant has a moderate risk to re-offend; (3) it may be difficult for defendant to control his sexual impulses; (4) while on probation for child molestation, defendant fantasized about having sex with children; (5) while on probation for child molestation, defendant possessed child pornography; and (6) defendant committed the crime of possession of child pornography even after he attended sexual offender treatment.

    III.    Reflect the Seriousness of the Offense, to Promote Respect for the Law, and to Provide Just Punishment for the Offense

The trafficking in images of the sexual abuse of children is a serious offense and the guidelines reflect the seriousness of the crime.  Child pornography images are images of children being sexually abused and those images are then trafficked around the world on the internet.  Even when the perpetrator of the original abuse is imprisoned, the images of the child's sexual abuse continue to be traded.  The child's abuse never ends because the images of the abuse are present in hundreds of locations.

### IV. To Afford Adequate Deterrence to Criminal Conduct and To Protect the Public from Further Crimes of the Defendant

Stiff sentences are necessary to reduce or eliminate the market for child pornography and to protect children from becoming victims to feed that market.  The number of child pornography cases has skyrocketed in the last five years and prison sentences are necessary to deter the collection and trade of child pornography.

### V. Avoid Unwarranted Sentence Disparities among Defendants

Section 3553(a) also directs courts to consider the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.  The Section 3553(a) factors support a sentence within the guideline range of 151 to 188 months.

### VI. The Federal Sentencing Guidelines

The parties have agreed that the defendant should be sentenced under the guidelines pursuant to the guideline calculations recommended by the parties.  The defendant, in his sentencing memorandum, requests that the Court run the sentences in this matter concurrently with the sentences imposed in the State of Missouri.

When a defendant, such as the defendant here, is subject to an undischarged term of imprisonment, the district court may impose concurrent or consecutive sentences. See 18 U.S.C. § 3584(a). The court, in determining whether to impose concurrent or consecutive sentences, shall consider the factors set forth in 18 U.S.C. § 3553(a). See 18 U.S.C. § 3584(b). "Section 3584(a), (b) of Title 18, United States Code, mandates consideration of the § 3553(a) factors in determining whether to impose a concurrent, partially concurrent, or consecutive sentence, and encourages consecutive sentence when prison terms for multiple offenses are imposed at different times. The objective is to achieve a reasonable incremental punishment for the instant offense and avoid unwarranted disparity." United States v. Betts, 509 F.3d 441, 447 (8th Cir. 2007) (internal quotation marks and citations are omitted). Under 18 U.S.C. § 3553(a), the district court must consider the Sentencing Guidelines and the pertinent policy statements. The applicable Guideline provision is USSG § 5G1.3(c), which provides, "(Policy Statement) In any other case involving an undischarged term of imprisonment, the sentence for the instant offense may be imposed to run concurrently, partially concurrently, or consecutively to the prior undischarged term of imprisonment to achieve a reasonable punishment for the instant offense."

Application note 3(A) provides general guidance to the Court:

A) In General. –Under subsection (c), the court may impose a sentence concurrently, partially concurrently, or consecutively to the undischarged term of imprisonment. In order to achieve a reasonable incremental punishment for the instant offense and avoid unwarranted disparity, the court should consider the following:
 (i) the factors set forth in 18 U.S.C. § 3584 (referencing 18 U.S.C. § 3553(a));
 (ii) the type ( e.g., determinate, indeterminate/parolable) and length of the prior undischarged sentence;
 (iii) the time served on the undischarged sentence and the time likely to be served before release;
 (iv) the fact that the prior undischarged sentence may have been imposed in state court rather than federal court, or at a different time before the same or different federal court; and

7

>   (v) any other circumstance relevant to the determination of an appropriate sentence for the instant offense.

However, application note 3(C) provides specific guidance for the Court in the current instance:

>   C) <u>Undischarged Terms of Imprisonment Resulting from Revocations of Probation, Parole or Supervised Release</u>.–Subsection (c) applies in cases in which the defendant was on federal or state probation, parole, or supervised release at the time of the instant offense and has had such probation, parole, or supervised release revoked. Consistent with the policy set forth in Application Note 4 and subsection (f)[2] of § 7B1.3 (Revocation of Probation or Supervised Release), <u>the Commission recommends that the sentence for the instant offense be imposed consecutively to the sentence imposed for the revocation</u>.

USSG § 5G1.4, comment. (n.3(C)) (emphasis added); <u>see also</u> <u>Betts</u>, 509 F.3d at 447.

In the instant case, defendant has an undischarged term of imprisonment resulting from revocation of his probation. "The Guidelines recommend 'the sentence for the instant offense be imposed consecutively to the sentence imposed for the revocation.'" <u>Betts</u>, 509 F.3d at 447; <u>see also</u>, PSR at ¶ 67 (The Commission, in such a case, "recommends that the instant offense be imposed consecutively to the sentence imposed for the revocation in order to achieve an incremental punishment for both the instant offense and the violation of probation.").

The factors set forth in 18 U.S.C. § 3553(a), as discussed above, support the Commission's recommendation that the sentences run consecutively in this case.

WHEREFORE, for the foregoing reasons, the Government respectfully requests that the Court sentence defendant to a term of imprisonment of 188 months to run consecutively to the term of imprisonment for which defendant is serving in the State of Missouri.

---

[2]USSG § 7B1.3(f) provides: "Any term of imprisonment imposed upon the revocation of probation or supervised release shall be ordered to be served consecutively to any sentence of imprisonment that the defendant is servicing, whether or not the sentence of imprisonment being served resulted from the conduct that is the basis of the revocation or probation or supervised release."

                Respectfully submitted:

                MICHAEL W. REAP
                Acting United States Attorney


                *s/ Robert F. Livergood*
                ROBERT F. LIVERGOOD, 22937
                Assistant United States Attorney
                111 S. 10th Street, Room 20.333
                St. Louis, Missouri 63102
                (314) 539-2200
                (314) 539-2309 FAX
                Rob.Livergood@usdoj.gov

CERTIFICATE OF SERVICE

I hereby certify that on December 19, 2009, the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon the following:

Ms. Felicia Jones
Assistant Federal Public Defender
1010 Market Street, Suite 200
St. Louis, Missouri 63101
(314) 241-1255

                                                                             s/*Robert F. Livergood*
                                                                             ROBERT F. LIVERGOOD, 22937
                                                                             Assistant United States Attorney